SYLVIA TORRES-GUILLÉN (SBN 164835)
*storres-guillen@aclusocal.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA, INC.
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5220
Facsimile: (213) 977-5299

Attorneys for Plaintiffs

*Additional counsel on following page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| SIGMA BETA XI, INC.; ANDREW M., by and through his next friend DENISE M., on behalf of himself and all others similarly situated; JACOB T., by and through his next friend HEATHER T., on behalf of himself and all others similarly situated; J.F., by and through her next friend CINDY MCCONNELL, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE; MARK HAKE, Chief of the Riverside County Probation Department, in his official capacity; BRYCE HULSTROM, Chief Deputy of the Riverside County Probation Department, in his official capacity,<br><br>Defendants. | Case No. 5:18-cv-01399-JGB-JEM<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>*[Summary of Objections and Responses, Declarations of Sylvia Torres-Guillén, Linnea Nelson and Kelly Moran (and attached exhibits) and Proposed Order Filed Concurrently Hereto]*<br><br>Hearing Date: April 6, 2020<br>Hearing Time: 9:00 a.m.<br>Complaint Filed: July 1, 2018<br><br>Judge: Hon. Jesus G. Bernal<br>Mag. Judge: John E. McDermott |

1  LINNEA L. NELSON (SBN 278960)
     *lnelson@aclunc.org*
2  AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF
3  NORTHERN CALIFORNIA, INC.
   39 Drumm St.
4  San Francisco, CA 94111
   Telephone:  (415) 621-2493
5
   SARAH HINGER*
6   *shinger@aclu.org*
   AMERICAN CIVIL LIBERTIES
7  UNION FOUNDATION
   125 Broad St., 18th Floor
8  New York, NY 10004
   Telephone:  (212) 519-7882
9  *Admitted *Pro Hac Vice*

10  DAVID LOY (SBN 229235)
      *davidloy@aclusandiego.org*
11  MELISSA DELEON (SBN 272792)
      *mdeleon@aclusandiego.org*
12  AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF SAN
13  DIEGO AND IMPERIAL COUNTIES
   P.O. Box 87131
14  San Diego, CA 92138-7131
   Telephone: (619) 398-4489
15  Facsimile:  (619) 232-0036

   SHEPPARD, MULLIN, RICHTER &
   HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
   MOE KESHAVARZI (SBN 223759)
     *mkeshavarzi@sheppardmullin.com*
   ANDREA N. FEATHERS (SBN 287188)
     *afeathers@sheppardmullin.com*
   333 South Hope Street, 43rd Floor
   Los Angeles, California 90071-1422
   Telephone:    (213) 620-1780
   Facsimile:    (213) 620-1398

   MICHAEL HARRIS (SBN 118234)
     *mharris@youthlaw.org*
   NATIONAL CENTER FOR
   YOUTH LAW
   405 14th Street, 15th Floor
   Oakland, CA 94612
   Telephone:    (510) 835-8098
   Facsimile:    (410) 835-8099

   VICTOR LEUNG (SBN 268590)
     *vleung@aclusocal.org*
   AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF SOUTHERN
   CALIFORNIA, INC.
   1313 W. 8th Street
   Los Angeles, CA 90017
   Telephone:  (213) 977-5219
   Facsimile:  (213) 977-5299
   Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that on April 6, 2020, or on such date as may be specified by the Court, in the courtroom of the Honorable Jesus G. Bernal, United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California, Plaintiffs Sigma Beta Xi, Inc., Andrew M., Jacob T., and J.F. (together, "Plaintiffs"), on behalf of themselves and the class, hereby move for an order finally approving the terms of the proposed class action settlement reached with Defendants.

    This motion for final approval (the "Motion") is unopposed. It is made on the following grounds: (1) the proposed settlement is fair, adequate, and reasonable; (2) the class notice fairly and adequately informed the class members of the proposed settlement, their right to object, and the date and time of the final approval hearing; and (3) the parties have not received any objection from any class member.

    This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Summary of Objections and Responses, the Declarations of Sylvia Torres-Guillén, Linnea Nelson and Kelly Moran (and the exhibits attached thereto), the unopposed proposed Final Approval Order, all of the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-3-

papers and pleadings on file in this action, and any further evidence presented to the
Court at the time of the hearing.


Dated:  March 9, 2020                    By:             /s/ Sylvia Torres-Guillén
                                         ACLU FOUNDATION OF SOUTHERN
                                         CALIFORNIA
                                         Sylvia Torres-Guillén
                                         Victor Leung

                                         ACLU FOUNDATION OF NORTHERN
                                         CALIFORNIA
                                         Linnea L. Nelson

                                         AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION
                                         Sarah Hinger (Admitted *Pro Hac Vice*)

                                         ACLU FOUNDATION OF SAN DIEGO AND
                                         IMPERIAL COUNTIES
                                         David Loy
                                         Melissa Deleon

                                         SHEPPARD, MULLIN, RICHTER
                                         & HAMPTON LLP
                                         Moe Keshavarzi
                                         Andrea N. Feathers

                                         NATIONAL CENTER FOR YOUTH LAW
                                         Michael Harris

                                         Attorneys for Plaintiffs

-4-

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 9

II.     PROCEDURAL BACKGROUND .......................................................... 12

III.    THE SETTLEMENT ........................................................................... 13

A.      Changes to the Youth Accountability Team and Other Programs and Policies ................................................................................ 13

1.      Referrals to YAT and YAT Contracts Will No Longer Include Youth Alleged to Violate Section 601 ........................... 13

2.      Defense Counsel Will Now Be Provided for All Youth Referred to YAT .................................................................... 14

3.      Defense Counsel Will Now Be Part of the YAT Team ............. 15

4.      Robust Notice Will Be Provided to Youths and Their Parents/Guardians .................................................................. 16

5.      Training and Guidelines Will Ensure Reliability of Risk Assessments ........................................................................... 17

6.      YAT Contracts Will Provide Constitutionally Sufficient Notice, Focus on More Positive Development, and Exclude Allegedly Unconstitutional Terms .............................. 17

7.      The Probation Department Will Provide Increased Protections Regarding Record Collection, Creation, and Retention ............................................................................... 18

8.      The Department Will Provide Data for Analysis of Referrals, Participation, and Outcomes in YAT ...................... 19

9.      The Department Will Conduct YAT-Specific Training and Modify Certain Policies and Public Information ...................... 20

10.     Seven Million Dollars of Funding Will Be Provided to Community-Based Organizations to Serve Youth Referred to or in the YAT Program, and Membership on the Juvenile Justice Coordinating Council Will Be Expanded to Allow for Greater Community Input ...................................... 20

11.     YAT Case Files for Individual Youth Will Be Sealed or Destroyed, Which Will Effectively Result in Expungement ..... 21

12.     The Probation Department Will Agree to Enforcement Measures and Monitoring .......................................................... 22

B.      The Plaintiffs and the Class Members Will Agree to a Release ........... 23

C.      The Parties Have Agreed to Payment of Attorneys' Fees and Costs ........................................................................................ 23

SMRH:4839-6434-9091.5                                    PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
                                                                                                      SETTLEMENT

D.    This Court Will Have Continuing Jurisdiction ......................................24

IV.    NOTICE TO THE CLASS AND OBJECTIONS AND RESPONSES RECEIVED ...................................................................24

V.    LEGAL STANDARD FOR FINAL APPROVAL OF CLASS SETTLEMENT ............................................................................25

VI.    THE COURT SHOULD GRANT FINAL APPROVAL ...............................26

A.    The Settlement was the Result of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel .................26

B.    The Substantial Relief Provided by the Settlement Is Fair and Reasonable Given the Strength of Plaintiffs' Case and the Risks of Litigation..................................................................................29

C.    Class Members Reacted Positively to the Settlement And Did Not Raise Any Objections.......................................................31

D.    A Governmental Participant is a Party to the Agreement, Weighing in Favor of Settlement..........................................31

VII.    CONCLUSION .................................................................32

SMRH:4839-6434-9091.5

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*Acosta v. TransUnion, LLC*
   243 F.R.D. 377 (C.D. Cal. 2007)...................................................................27

5

6

*Browning v. Yahoo! Inc.*
   No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal.
   Nov. 16, 2007) ...............................................................................................32

7

8

*Fraley v. Facebook, Inc.*
   966 F. Supp. 2d 939 (N.D. Cal. 2013)...........................................................26

9

10

*Glass v. UBS Fin. Servs.*
   No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan.
   26, 2007) ........................................................................................................31

11

12

*Kim v. Space Pencil, Inc.*
   No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922 (N.D. Cal.
   Nov. 28, 2012) ...............................................................................................31

13

14

15

*Lewis v. Starbucks Corp.*
   No. 2:07-cv-00490-MCE, 2008 WL 4196690 (E.D. Cal. Sept. 11,
   2008)...............................................................................................................28

16

17

*Litty v. Merrill Lynch & Co.*
   No. CV 14-0425 PA, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)...................27

18

19

*In re Netflix Privacy Litig.*
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18,
   2013)...............................................................................................................26

20

21

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ...............................................................26, 30

22

23

<u>Statutes</u>

24

California Government Code § 11135........................................................................10

25

California Welfare & Institutions Code § 601 ...........................9, 10, 13, 18, 21, 29

26

California Welfare & Institutions Code § 781 ........................................................22

27

28

-7-

California Welfare & Institutions Code § 786.5 ........................................................22

California Welfare and Institutions Code § 602...........................................14, 19, 22

California Welfare and Institutions Code § 654........................................................10

Other Authorities

Fed. R. Civ. P. Rule 23 .............................................................................................26

Fed. R. Civ. P. Rule 23(b)(2)....................................................................................30

Fed. R. Civ. P. Rule 23(e)..........................................................................................25

Fed. R. Civ. P. 23(e)(2)..............................................................................................25

Fed. R. Civ. P. 23(e)(2)(A)-(D) .................................................................................26

SMRH:4839-6434-9091.5

## I.    __INTRODUCTION__

Plaintiffs and Defendants (together, the "Parties") jointly move the Court for a final order approving the Settlement of Class Action Claims (the "Settlement"). On August 26, 2019, this Court entered an order preliminarily approving the Settlement, approving the form of notice to be given to the Class, and setting a date for the hearing for final approval of the Settlement.  Since then, the Parties and the claims administrator have sent notice to class members by mail, through the Internet and by posting at specific locations.  The Parties have not received any objections by class members, and the response from callers to the hotline established by the ACLU has been decidedly positive.

The settlement of this lawsuit is a substantial positive accomplishment for juvenile justice in Riverside County.  It was filed in July 2018 by Plaintiffs Sigma Beta Xi, Inc., Jacob T., J.F., and Andrew M. (together, "Plaintiffs") to challenge the legality of the Youth Accountability Team ("YAT") program, which placed children as young as 12 years old under probation supervision for "pre-delinquent" school misconduct, including childish behavior such as "failure/refusal to follow directives (actively or passively)," "incorrigibility," school truancy and other behavior that falls into the broad category of "status offenses" under California Welfare & Institutions Code Section 601 ("Section 601").

Plaintiffs contend that the YAT program violates the constitutional rights of youth in several ways, for example by failing to give them adequate or accurate notice, by failing to provide them with counsel, and by subjecting them to probation jurisdiction under Section 601, the terms of which are unconstitutionally vague on its face and as applied by the County.  Plaintiffs also contend that the YAT program imposed intrusive and unconstitutional contract conditions that allowed officers to search youth in overly broad terms and restricted their expressive and associational rights.  Plaintiffs contend that Black and Latinx children are disproportionately referred to the YAT program, and a disproportionate number of referrals for Black

and Latinx students are for the lowest-level offenses, in violation of California Government Code Section 11135, which prohibits disparate impact discrimination. Defendants disputed these contentions.

After several months of extensive arms-length negotiations, Plaintiffs reached final settlement terms with Defendants, County of Riverside, Mark Hake, and Bryce Hulstrom ("Defendants") in July 2019.  A copy of the Settlement Agreement (the "Agreement") is attached as Exhibit A to the declaration of Sylvia Torres-Guillén.

The Agreement reflects the Parties' deliberative, conscientious efforts to agree upon injunctive relief that substantially limits and reforms the YAT program, and to make other positive changes in the way the County operates its juvenile informal probation programs.  Major changes achieved by the Settlement Agreement include:

- Youth will no longer be referred to the YAT program for allegedly violating Section 601.

- Effective July 1, 2019, the County  terminated YAT probation for any youth who was then on YAT probation under Section 601 and notified the youth and the parent or guardian that the youth continues to be eligible for diversion under California Welfare and Institutions Code Section 654 ("Section 654").[1]  The case files for all youth who were referred and/or placed on YAT probation without an underlying application for a petition to the juvenile court will be identified, sealed, and destroyed. This effectively means that all members of the class will have their records

---

[1] As the program is currently operated, youth who participate in the YAT program are prohibited in the future from participating in another diversion program under California Welfare and Institutions Code Section 654 as an alternative to charges in juvenile court.  This Settlement will effectively remove that prohibition for youth who were placed in the YAT program for alleged violations of Section 601.

expunged so that there will be no record of them having participated in any informal diversion program.

- All youth referred to the YAT program will receive appointed defense counsel at no cost.  These defense counsel will now be part of the YAT team and will provide advice and information to the youth throughout the process.

- The County will provide more accurate, complete, and informative notice to youth referred to the YAT program and their parents or guardians, using a template attached to the Agreement.

- YAT contracts will be more individualized, will focus more on positive development, and will not contain search terms or associational limits.  There shall be a presumption against drug or alcohol testing.  Drug and alcohol testing will be very limited to cases where a direct nexus between the condition and the alleged offense is established to warrant that provision or where subsequent incidents of drug or alcohol use by the youth have been identified.  The County will use a template contract attached to the Agreement.  YAT program records for participating youth will be sealed or destroyed either automatically or pursuant to certain procedures, depending on the case type, and with assistance of counsel.

- Riverside County will no longer have YAT offices in middle schools or high schools.

- The Riverside County Probation Department ("Probation Department") will modify its policies and provide extensive training, as described in the Agreement.

- The membership of the Juvenile Justice Coordinating Council ("JJCC"), which oversees the YAT program, will now have at least 45% community representation, and the County will provide at least $7 million in funding

to community organizations, *i.e.*, $1.4 million on an annual basis for five years beginning in fiscal year 2020/2021.

- Two experts who have decades of experience between them in positive youth development, understanding how probation departments function, and creating transformational change in probation departments will jointly monitor the County's compliance with the Agreement for five years.

The significant benefits achieved by the Settlement, the positive reaction of the class members and complete lack of any objections demonstrate that the Settlement is not only fair, adequate, and reasonable, but overwhelmingly positive. Accordingly, the Parties respectfully request the Court grant final approval of the Settlement. Plaintiffs also request that the Court grant their unopposed Motion For Attorneys' Fees, which the Court set for hearing on the same date as this Motion.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed their initial complaint on July 1, 2018. (ECF 1.) On September 13, 2018, they moved for class certification and appointment of class counsel. (ECF 33.) Defendants stipulated to class certification and appointment of class counsel. (ECF 35.) Shortly thereafter, the Court issued an order granting the motion, certifying the class and appointing Plaintiffs' counsel as class counsel. (ECF 37.) The Court's order defined the class as:

> All children in Riverside County who have been referred to the Riverside County Youth Accountability Team ("YAT") program pursuant to Cal. Welf. & Inst. Code § 601, and who have either been placed on a YAT contract or have been referred but not yet placed on a YAT probation contract.

(*Id.*, p. 2:8-12.) Plaintiffs filed a First Amended Complaint (the "FAC") on September 26, 2018.

From November 2018 through July 2019, the Parties engaged in informal discovery and serious, arms-length settlement discussions, which occurred over the course of nearly twenty in-person meetings and additional telephonic meetings. (Torres-Guillén Decl., ¶ 9.) On July 23, 2019, the Parties agreed to final settlement

-12-

1  terms.  (*Id.*, ¶ 13.)  A copy of the final Agreement is attached to the declaration of

2  Sylvia Torres-Guillén as Exhibit 1.  (*Id.*, Ex. 1.)

3       On July 24, 2019, Plaintiffs filed a Motion for Preliminary Approval.  (ECF

4  57.)  The Motion for Preliminary Approval was unopposed and the Court held a

5  hearing on August 26, 2019.  (ECF 59.)  The Court considered a number of factors,

6  and ultimately determined that they all weighed in favor of preliminary approval of

7  the Agreement.  Thus, the Court granted preliminary approval of the proposed

8  Agreement as fair, reasonable, and adequate for members of the settlement class.

9  (*Id.*)  The Court further determined that the proposed notice plan was appropriate

10  under the circumstances of this case.  (*Id.*)

11       On December 19, 2019, the Court ordered notice to be completed by

12  January 3, 2020, the settlement class members to have until February 17, 2020 to

13  file any objection to the Agreement, the Parties to file a summary of objections or

14  responses received, if any, no later than March 9, 2020, and the Plaintiffs to file a

15  motion for final approval no later than March 9, 2020.  (ECF 77.)

16                          **III.    THE SETTLEMENT**

17       The Parties' settlement is detailed and expansive.  It makes significant

18  changes to the way the County operates the YAT program and other non-court-

19  ordered juvenile probation supervision programs, and it provides additional training

20  and monitoring.  It also increases community involvement and funding to

21  community organizations.  In exchange, class members will agree to release

22  Defendants from liability for the claims for declaratory or injunctive relief brought

23  in this lawsuit.  The major terms of the Agreement are summarized below.

24  **A.    Changes to the Youth Accountability Team and Other Programs and Policies**

25       **1.    Referrals to YAT and YAT Contracts Will No Longer Include
            Youth Alleged to Violate Section 601**

26

27       One of Plaintiffs' core allegations was that youth whose referrals were based

28  on California Welfare and Institutions Code Section 601 ("Section 601"), *i.e.*, the

-13-

class members, should not be referred to YAT probation because they were often accused of only minor school misbehavior not warranting involvement by law enforcement.  Under the Agreement, Defendants have agreed that these youth will no longer be referred to the YAT program or other non-court-ordered probation supervision programs, and that Defendants will no longer accept such referrals from schools or other sources.  (Agreement, ¶ III(A)-(B).)

The only youth who will be referred to or placed in the YAT program and similar County programs are those referred under California Welfare and Institutions Code Section 602 ("Section 602"), which covers circumstances involving allegations of purported criminal violations.  (*Id.*)  The Agreement also provides comprehensive constitutional protections for youth referred and/or placed in the YAT program or any other non-court-ordered supervision program for allegedly violating Section 602.  (*Id.*, ¶ III(C).)

### 2.  Defense Counsel Will Now Be Provided for All Youth Referred to YAT

Defendants have agreed to provide defense counsel at no cost for all youth referred to the YAT program or other non-court-ordered supervision programs. (Agreement, ¶ IV(A)-(F).)  The Parties also agreed that, within seven days of executing the Agreement, the parties would file a joint application to the Presiding Judge of the Riverside County Juvenile Court, requesting that the Court appoint counsel for all youth in YAT-related cases or any non-court ordered supervision programs.  On December 13, 2019, the Honorable Judith C. Clark of the Superior Court of California, Riverside (Supervising Juvenile Court Judge for the Riverside Superior Court) issued an order recognizing that, pursuant to agreement and stipulation by the Parties, all youth referred to and involved in a non-court-ordered probation supervision program operated by the County, including the YAT program, must be provided counsel by the County, for the purposes of the youth's involvement in the YAT program and/or any other non-court-ordered supervision

-14-

program, at no cost to the youth from the time the youth is referred to the YAT

program or any other non-court-ordered probation supervision program through the

time that all documents related to the youth's referral and/or participation in the

YAT program or any other non-court-ordered probation supervision program are

sealed and destroyed.  As conveyed to Judge Clark during several hearings on this

matter, and most recently at the December 13, 2019 hearing, the County of

Riverside agreed to fund the Juvenile Defense Panel so that the Juvenile Defense

Panel will be able to hire a team of lawyers and staff to effectively and zealously

represent all youth referred to the YAT program.  (Torres-Guillén Decl. ¶ 15.)

      The Parties agreed that youth who are referred to the YAT program or any

other non-court-ordered supervision program will consult with counsel before

meeting with the Probation Department or deciding whether to participate in the

program.  (Agreement, ¶ IV(F).)  The role of legal counsel will be to advocate for

and protect the rights of the youth client, including ensuring that the youth (1)

understands all applicable legal rights, (2) understands the potential consequences

and benefits of either entering the program or proceeding to court, and (3) is able to

knowingly, voluntarily, and intelligently make a decision regarding participation.

(*Id.*, ¶ IV(B).)  If, after consultation with counsel, the youth chooses to enter the

program, defense counsel's representation shall continue through the end of the

program, and will also include representation to ensure that, as permitted or required

by law, the youth's records and files are timely sealed and/or destroyed.  (*Id.*,

¶ IV(F).)  Defense counsel will also continue to be involved throughout the youth's

participation in the YAT program.

      **3.**    **Defense Counsel Will Now Be Part of the YAT Team**

      Defendants have agreed that defense counsel will be a part of the YAT team

or any other non-court-ordered supervision program team.  (Agreement, ¶ IV(A).)

Defense counsel will then be able to work with the team to ensure that the youth

receives the resources and supports the youth has requested or needed as part of the

-15-

YAT program or any other non-court-ordered supervision program.  This includes,
determining with the youth, and the youth's parent/guardian, before meeting with
probation, what resources, opportunities, and supports the youth should be provided
to ensure personal and academic success and health.   It also includes coming
together with the Probation Department to collectively create the program that is
most holistically helpful for the youth so that the YAT program is held accountable
to effectively serve the youth throughout the program.

### 4.    Robust Notice Will Be Provided to Youths and Their Parents/Guardians

The Parties agreed that youth will be afforded due process in all contacts with
Defendants related to the YAT program or any other non-court-ordered supervision
program.  (Agreement, ¶ V(A).)  As such, before assigning any youth to the YAT
program, the Probation Department shall determine that there is probable cause to
believe the youth committed the alleged offense that is the basis for the petition.
(Agreement, ¶ V(A)(1).)

When a youth is referred to the YAT program, the Probation Department will
provide the youth and the youth's parent or guardian(s) with an easy-to-understand
notice, available in English and Spanish, that includes:  (a) the charges and
allegations made against the youth; (b) a description of the YAT program; (c) notice
that information regarding the youth's participation may be disclosed to the juvenile
court in future proceedings; (d) notice that the youth's information will be stored in
County records, unless the records are later sealed or destroyed; (e) the criteria for
successful completion of the program; and (f) the right to have certified
interpretation at YAT program meetings.  (Agreement, ¶ V(A)(2)-(3).)

If the youth chooses to participate, the Probation Department must also
provide notice of completion of the program and/or notice if the youth is in danger
of not completing the program.  (Agreement, ¶ V(A)(9)-(10).)  Additional
protections and procedures are required in special circumstances involving

-16-

accommodations for disabilities, or where the Probation Department seeks to impose drug or alcohol testing and in other circumstances more fully described in the Agreement.  (Agreement, ¶ V(A)(4), (6), (7).)

### 5.  Training and Guidelines Will Ensure Reliability of Risk Assessments

The Probation Department currently uses the Ohio Youth Assessment System for Diversion ("OYAS") to determine whether youth referred to the YAT program should be put on a YAT contract or should receive lesser interventions.  (Agreement, ¶ VI(A).)  The two lesser inventions are (1) a 30-day consequence agreement, or (2) "counsel and close," *i.e.*, providing an advisory/warning to the youth and closing the case.  (*Id.*)

The Agreement provides training and guidelines aimed at ensuring reliability and consistency in officers' use of the OYAS system or any other risk assessment system, should the Probation Department change systems.  (*Id.*, ¶ VI(A)(1)-(2).)  This training and assessment will also reduce the impact of any explicit or implicit racial biases on the risk assessment process.

### 6.  YAT Contracts Will Provide Constitutionally Sufficient Notice, Focus on More Positive Development, and Exclude Allegedly Unconstitutional Terms

Plaintiffs allege that the YAT program fails to provide adequate notice to the youth and parent or guardian(s); and the form of contracts used by the YAT program include unconstitutional terms and focus on punitive measures to obtain the youth's compliance.  The Agreement reforms these contracts and the process for developing them.

Under the Agreement, when a youth decides to participate in the YAT program, the youth's contract will be jointly developed by the youth, the youth's parent(s) or guardian(s), defense counsel, and the YAT probation officer, based on the template attached to the Agreement as Exhibit A.  (Agreement, Ex. 1(A).)  The contract will provide information including the charges or allegations against the

-17-

youth, positive development goals, identification of the youth's strengths, resources for the youth and other terms relating to the youth's participation. (*Id.*, ¶ VII(A)(1)-(2) (list of information included in contracts), Ex. 1(A) (contract template).)

No YAT contract shall include the following terms: (1) tour of a correctional facility; (2) prohibitions against the youth associating with particular persons;[2] or (3) searches of the youth's person, vehicle, premises, cell phone, or other personal possession. (Agreement, ¶ VII(A)(5)(a)-(c).)

There will be a presumption against including contract terms allowing drug or alcohol testing. (Agreement, ¶ V(A)(4).) Such terms may only be provided if there is a direct nexus between the condition and the alleged offense, or where subsequent incidents of drug or alcohol usage have been identified. (*Id.*, ¶ V(A)(4), VII(A)(6).) When such terms are included, additional notice and safeguards are required. (*Id.*)

The contracts must be translated into another language when needed for the youth or the youth's parent or guardian. (Agreement, ¶ VII(A)(3).) The Probation Department must also provide accommodations for students with disabilities. (*Id.*, ¶ VII(A)(3)-(4).)

## 7. The Probation Department Will Provide Increased Protections Regarding Record Collection, Creation, and Retention

The Parties agreed that the Probation Department will not collect or maintain information on youth who do not fall under Welfare & Institutions Code Sections 601 or 602. (Agreement, ¶ VIII(A).) For those referred to the YAT program under Section 601, the Probation Department will retain only information that is obtained in the application for a petition, and only for the period of time required by the Probation Department's document retention policy. (*Id.*) No information about youth referred under Section 601 will be maintained in any gang-related intelligence

---

[2] The Settlement Agreement provides an exception for co-participants, victims, or witnesses related to the alleged referral offense. (Agreement, ¶ VII(A)(5)(b).)

databases, nor will the Probation Department seek or obtain information related to the immigration status of the youth or their parents or guardian(s).  (*Id.*, ¶ VIII(B)-(C).)

For youth referred under Section 602, the Probation Department will seek to minimize the amount of information requested and retained from the youth and the youth's parent or guardian, and it will maintain confidentiality over the records as provided by applicable law.  (Agreement, ¶ VIII(D)(2)-(3).)  Youth and their parents or guardians will have the right to inspect the information retained, and the Probation Department must provide notice prior to obtaining certain information concerning health or mental health.  (*Id.*, ¶ VIII(D)(2)-(3).)

## 8.    <u>The Department Will Provide Data for Analysis of Referrals, Participation, and Outcomes in YAT</u>

The Parties agreed that the Probation Department will provide the Juvenile Justice Coordinating Council ("JJCC") and the County Executive Officer annual analyses of anonymized data regarding referrals, participation and outcomes for youth in the YAT program or any other non-court-ordered juvenile supervision program, including disaggregation by race and ethnicity to track and address racial disparities.  (Agreement, ¶ IX(A)-(B).)  Written reports will be publicly available. (*Id.* ¶ IX(B).)  These reports and analyses will allow the JJCC, the County, and others to evaluate the effectiveness of the program and identify disparities and problems.

The report shall include information collected by the Probation Department throughout the year.  Specifically, within 180 days of the effective date of the Agreement, the Defendants shall, on a quarterly basis, collect and analyze data regarding youth who are placed into the YAT program or any other non-court-ordered supervision program.  (Agreement, ¶ IX(A).)  Defendants' analysis shall disaggregate the collected data by race/ethnicity, gender, age at time of alleged

offense, and foster youth status.  (*Id.*)  The written reports will be published and maintained at the Probation Department website.  (*Id.*, ¶ IX(B).)

### 9. The Department Will Conduct YAT-Specific Training and Modify Certain Policies and Public Information

The Parties agreed that the Probation Department will create a mandatory training program for personnel involved in the YAT program and similar programs and to personnel assigned to juvenile intake functions.  (Agreement, X(D).)  The Defendants agreed to provide such training on a yearly basis on the modified policies and procedures reflected in the Agreement.  (*Id.*, ¶ X(B), (D).)  The training, which will be led by experts Scott MacDonald and Naomi Goldstein, will emphasize:  positive youth development, identifying needed educational supports, learning about youth responses to trauma, and increasing cultural competence and awareness of implicit bias.  (*Id.*, ¶ X(D), Ex. 1(B).)

The County will revise all policies, procedures and public information to conform to the terms of the Agreement.  (Agreement, ¶ X(A), (C).)  Defendants will also incorporate all the existing policies, processes and/or operating procedures, whether written or unwritten, into their new training program.  (*Id.*, X(A).)

### 10. Seven Million Dollars of Funding Will Be Provided to Community-Based Organizations to Serve Youth Referred to or in the YAT Program, and Membership on the Juvenile Justice Coordinating Council Will Be Expanded to Allow for Greater Community Input

The JJCC is a County body composed of representatives from the Probation Department, law enforcement agencies, schools, social service agencies, and community service providers.  The JJCC's role is to oversee and distribute funding for County programs, including the YAT program, that are funded through the Juvenile Justice Crime Prevention Act.

The County agreed to add five additional community representatives to the JJCC, to be appointed through the Riverside County Board of Supervisors.  (Agreement, ¶ XI(A).)  Plaintiff Sigma Beta Xi, Inc., will have an additional seat on

the JJCC for two years. (*Id.*) The JJCC, in addition to its statutory duties, shall solicit and incorporate community feedback, review the data reports generated by the County described in Section IX of the Agreement, develop action plans and strategies to reduce disproportionalities in referrals and enrollment of youth in the YAT program, evaluate the effectiveness of the program and services provided in the YAT program, and identify potential improvements or modifications to Defendants' policies and/or practices. (*Id.*)

The County will also provide a minimum of $7 million to community-based organizations that have focused on positive youth development practices and have demonstrated effectiveness in providing affirmative, evidence-based supports or services primarily to the Riverside County community on a voluntary basis. (Agreement, ¶ XII.) Specifically, the County will provide $1.4 million annually for five years to these community-based organizations, subject to a request for proposal process, including review by the JJCC. (*Id.*)

## 11.    YAT Case Files for Individual Youth Will Be Sealed or Destroyed, Which Will Effectively Result in Expungement

The Agreement provides a process to seal and/or destroy individual YAT case files, which will differ for youth, depending upon how they were referred. (Agreement ¶ XIII.) Specifically, within 180 days of the effective date of the Agreement, all such files will be identified and specific action shall be taken. (*Id.*, ¶ XIII(A).)

For each youth referred to or placed on YAT probation *without* an application for a petition, the Probation Department will identify, seal and destroy the youth's YAT file within 180 days of the effective date of the Agreement. (Agreement, ¶ XIII(A)(1).) For youth who are referred to or placed on YAT *with* an application for a petition under the jurisdiction of Section 601, the Probation Department will maintain or destroy the youth's YAT file, consistent with the department's two-year document retention policy. Any such file that is maintained

-21-

1  will be destroyed immediately after the two-year time period has elapsed.

2  (Agreement, ¶ XIII(A)(2).)

3       For youth referred to or placed in the YAT program pursuant to Section 602,

4  the Parties filed an application to Supervising Juvenile Court Judge Clark,

5  requesting that the Riverside County Juvenile Court seal all juvenile case files that

6  would be eligible for sealing in accordance with applicable juvenile laws.

7  (Agreement, ¶ XIII(A)(3).)  On December 20, 2019, Judge Clark issued an order

8  recognizing that the Probation Department shall seal the YAT program case file

9  records in its custody relating to 23,717 youth whom the Probation Department has

10  deemed to have "successfully completed" the YAT program, pursuant to California

11  Welfare & Institutions Code Section 786.5.  The Probation Department shall also

12  notify all public or private agencies involved in operating the YAT program to seal

13  the YAT program case file records of these 23,717 youth. The Parties agreed in

14  December 2019 that, for the approximately 3,700 youth who were referred and/or

15  who were placed in the program pursuant to Section 602 who have not been

16  deemed by the Probation Department to have "successfully completed" the YAT

17  program, the County will contract with the Juvenile Defense Panel to contact those

18  individuals and file petitions to have their YAT program case file records sealed

19  pursuant to California Welfare & Institutions Code Section 781.  (Torres-Guillén

20  Decl. ¶ 15.)

21      **12.**    **The Probation Department Will Agree to Enforcement Measures**

22          **and Monitoring**

23       The Agreement identifies specific records that Defendants will provide to

24  Class Counsel to certify that Defendants are complying with specific terms of the

25  settlement.  (Agreement, ¶ XIV(A).)  These records will include all amendments and

26  modifications to Defendants' departmental policies and procedures regarding the

27  YAT program or any other non-court-ordered supervision program administered by

28  the Probation Department, consistent with the Agreement.  (*Id.*, ¶ XIV(A)(1).)  All

-22-

awareness, educational, and outreach information created, drafted, or released by Defendants reflecting the terms of the Agreement will be provided to Class Counsel. (*Id.*, ¶ XIV(A) (2).)  In addition, all template notifications sent to minors and/or their parents and guardians and all template voluntary juvenile probation contracts used in the YAT program or any other non-court-ordered supervision program administered by Defendants will be provided to Class Counsel.  (*Id.*, ¶ XIV(A)(3)-(4).)

The Parties also agree that the Court should appoint Scott MacDonald and Naomi Goldstein as qualified joint third-party monitors to ensure the County's compliance with the Agreement.  (*Id.*, ¶ XIV(B).)  These two experts have decades of experience between them in positive youth development, and in understanding how probation departments function and how to create transformational change in probation departments.  They will jointly monitor the County for five years and provide the Court with the information necessary to oversee Defendants' compliance during the period of time that the Court will maintain jurisdiction over this case.

**B.      The Plaintiffs and the Class Members Will Agree to a Release**

In exchange for the benefits conferred by the Settlement, the Plaintiffs and class members agree to release Defendants from liability for the claims for declaratory or injunctive relief brought in this lawsuit, as further described in the Agreement.  (Agreement, ¶¶ II(A), I(J).)

**C.      The Parties Have Agreed to Payment of Attorneys' Fees and Costs**

Defendants agree to pay attorneys' fees and costs to Class Counsel of $1 million.  The Parties have agreed that this is a fair, reasonable, and appropriate amount, given the significant time and effort that Class Counsel has spent investigating this case pre-litigation, drafting and developing the complex and comprehensive pleadings, moving for class certification, conducting formal and informal discovery, and drafting and negotiating a very detailed and complex

-23-

settlement at arms-length over a period of several months.  (*See* Torres-Guillén

Decl., ¶¶ 9-10.)

The attorneys' fees are also fair, reasonable and appropriate given that Class

Counsel are highly experienced, well-regarded, skilled litigators who effectively

managed this complex class action; achieved an exceptional result for the thousands

of class members, protecting critical constitutional and civil rights; and was the

result of Class Counsel's extensive and uncompensated effort since initiating their

investigation into the YAT program in 2015.  (*See* Torres-Guillén Decl., ¶¶ 3-19,

Exs. 2-5.)  The amount of fees sought is particularly reasonable considering that, as

a result of settlement negotiations, Class Counsel have substantially discounted their

fees below their lodestar and the amount that they would have sought in the absence

of a settlement agreement.  (*Id.*, ¶ 18.)

**D.**     **This Court Will Have Continuing Jurisdiction**

The Agreement provides that the District Court will retain jurisdiction to

oversee compliance with the Agreement, enforce the Agreement's terms, and hear

any disputes that cannot be informally resolved by the Parties pursuant to the

dispute resolution process set forth in the Agreement.  (Agreement, ¶ XV.)  The

basis for the fees sought is set forth in further detail in Plaintiffs' unopposed Motion

for Attorneys' Fees, which the Court set for hearing the same date as the hearing on

this Motion.

## IV.    NOTICE TO THE CLASS AND OBJECTIONS AND RESPONSES RECEIVED

Consistent with the Settlement Agreement and the Court's orders, the Parties

have provided notice to the class members in the following ways:  (1) mailing the

notice to class members' addresses; (2) posting the notice on the County's website;

(3) posting the notice on the websites of the ACLU of Southern California, ACLU of

Northern California, ACLU of San Diego and Imperial Counties, and the National

Center for Youth Law; (4) posting the notice in areas where YAT probation officers

are regularly stationed; and (5) providing the notice to juvenile defense attorneys for the County; (6) posting the notice in areas where YAT probation officers are regularly stationed.  (Nelson Decl., ¶¶ 3-4; Declaration of Kelly Moran ("Moran Decl."), ¶¶ 4, 7.)  The direct notice by mail was completed by January 3, 2020 in English, and by January 17, 2020 in Spanish.  (Moran Decl., ¶ 11.)

The notice informed class members that they could object or respond to the Settlement, or seek more information, by sending a statement to Class Counsel Linnea Nelson at the ACLU of Northern California's address or email.  (Nelson Decl., ¶ 10.)  During the response period, of the tens of thousands of affected youth, Class Counsel received 154 voicemail messages on the Hotline by class members and/or their parents or guardians, and responded to all of them by phone.  (*Id.*, ¶ 13.)  One individual contacted Ms. Nelson by email.  (*Id.*, ¶ 9.)  At least ten of the callers to the Hotline affirmatively expressed support of the Settlement.  (*Id.*, ¶ 15.)  Only two individuals had any kind of negative reaction.  (*Id.*, ¶ 16.)  The individual who contacted Ms. Nelson by email stated that she had a positive experience with the YAT program and thought the lawsuit was the "funniest lawsuit" she had ever seen.  (*Id.*)  The reaction of the other individual, who called the Hotline, was characterized as negative because, as a parent of two potential class members who were referred to the YAT program, she felt her children had been harmed by the YAT program and was upset the class did not seek monetary damages.  (*Id.*)

Importantly, to date, Class Counsel has not received a single objection to the Settlement either by phone, in person or in writing.  (Nelson Decl., ¶ 17.)  Counsel for Defendants also has not received any objection whatsoever to the Settlement from class members or their parents or guardians, either by phone, in person or in writing.  (Moran Decl., ¶ 13.)

## V.    LEGAL STANDARD FOR FINAL APPROVAL OF CLASS SETTLEMENT

The Court shall grant final approval of a class action settlement if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "[T]he question whether a

settlement is fundamentally fair within the meaning of Rule 23(e) is not the same as asking the reviewing court if perfection has been achieved.  Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'"  *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 941 (N.D. Cal. 2013) (internal citations omitted).  In considering whether a settlement is "fair, reasonable, and adequate," the court should consider whether (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(A)-(D).

In making this determination, the Ninth Circuit considers the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the extent of discovery completed and the stage of the proceedings; (5) the amount offered in settlement; (6) the experience and views of counsel; (7) the presence of a governmental participant; and, (8) the reaction of the class members to the settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

## VI.    THE COURT SHOULD GRANT FINAL APPROVAL

The Court should grant final approval of the Settlement for the reasons described at length in the Motion for Preliminary Approval, and also because there have been no objections to the Settlement by any class member.

## A.    The Settlement was the Result of Informed, Non-Collusive, and Arms-Length Negotiations Between Experienced Counsel

Courts presume that a class action settlement was fair and reasonable when it was the result of "non-collusive, arms' length negotiations conducted by capable and experienced counsel."  *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).  "To determine whether there

-26-

has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." *Litty v. Merrill Lynch & Co.*, Case No. CV 14-0425 PA (PJWx), 2015 WL 4698475, *108 (C.D. Cal. Apr. 27, 2015) (*quoting Staton*, 327 F.3d at 961).

Here, settlement negotiations were conducted at arms' length, with extensive back-and-forth between the Parties on dozens of substantive points. The Parties reached final settlement terms after nearly twenty in-person meetings and numerous telephonic meetings over more than six months. (Torres-Guillén Decl., ¶ 9.) These discussions were conducted by highly experienced, well-regarded counsel, with significant experience in litigation, civil rights, juvenile justice, criminal justice, class actions, and other complex litigation. (*Id.*, ¶ 19, Exs. 2-5.) Class Counsel were able to achieve exceptional and comprehensive results for the class that protects their constitutional and civil rights. (*Id.*, ¶¶ 15-19.) These results beneficially reach both the youth who were previously referred and placed in the constitutionally infirm YAT program and those who will be referred to and placed in the transformed and youth-centered YAT program. These facts weigh in favor of final approval.

Additionally, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta v. TransUnion, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted). In this case, negotiations were informed by extensive formal and informal discovery provided by Defendants, thousands of pages of public records obtained by Plaintiffs prior to filing the lawsuit, and Plaintiffs' comprehensive independent investigations. (Torres-Guillén Decl., ¶¶ 3-6.) Class Counsel reviewed the information obtained and analyzed the YAT program, including the manner it was

-27-

1    being implemented, the youth targeted, and the constitutional rights and violations

2    implicated.  (*Id.*, ¶¶ 4-5.)  After carefully assessing the issues and working closely

3    with Plaintiffs and other members of the class, Class Counsel developed a

4    comprehensive plan to eradicate the problems in the YAT program and put in place

5    positive reforms.  (*Id.*, ¶ 6.)  Although Plaintiffs did not conduct depositions, there

6    were extensive day-long meetings with Defendants and Defendants' counsel to further

7    assess, address, and correct the issues regarding how the YAT program is operated

8    and a myriad of other Probation Department policies and procedures.  Almost all of

9    these meetings included high-level staff from the Probation Department and the

10   County who provided significant insight and information regarding how the YAT

11   program works and feedback on the feasibility of proposed reforms.  (*Id.*, ¶¶ 10, 12.)

12   This substantial information, which was obtained through careful investigation and

13   review of all the documentary evidence, and gathered through extensive meetings with

14   Defendants and Defendants' counsel, was sufficient to give the parties a clear view of

15   the strengths and weaknesses of their respective cases.

16        This Agreement was based in large part on the information learned from

17   extensive fact-finding that was conducted in this case.  Circumstances indicating

18   extensive discovery and fact-finding support approval of the class settlement.  *See*

19   *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D.

20   Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as

21   discovery allowed the parties to form a clear view of the strengths and weaknesses of

22   their cases.").

23        The resulting Agreement is highly detailed and exceptionally favorable to the

24   class members and all other youth in Riverside County who may become involved

25   in the YAT program or other non-court-ordered probation supervision programs in

26   the future.  The Agreement also includes the creation of template documents that

27   would be used in the various stage of the YAT program, from the initial notice given

28   to youth to the actual YAT contract.  (Agreement, Ex. 1(A).)  It reflects both sides'

-28-

1  conscientious efforts to provide meaningful, beneficial changes in the YAT program

2  and any other non-court-ordered supervision program operated by the Probation

3  Department, and in related governmental processes.  (Torres-Guillén Decl., ¶ 16.)

4  Class Counsel also urged, fought for, and secured agreement from the County to

5  allow defense counsel to be part of the YAT team and to provide defense counsel at

6  no cost to all youth throughout the program.  (*Id.*, ¶ 15.)  This new right for all youth

7  who are referred to the YAT program or any other non-court-ordered probation

8  supervision to receive no-cost defense counsel will be historic.  (*Id.*)  In sum, this

9  Agreement amply demonstrates that the Parties' negotiations were informed, arm's-

10  length, and non-collusive.

11  **B.**    **The Substantial Relief Provided by the Settlement Is Fair and Reasonable**
        **Given the Strength of Plaintiffs' Case and the Risks of Litigation**

12

13         The law and the evidence fully support Plaintiffs' claims that Defendants'

14  operation of the YAT program violates the constitutional rights of the class

15  members and that Section 601 is unconstitutionally vague.  For example,

16  Defendants failed to give adequate notice to youth and their guardians about the

17  voluntary nature of the program, the basis of their referrals to the YAT program, the

18  requirements of the program, and the fact that participating in the program would

19  make them ineligible for diversion in the future.  (*See* FAC, ECF 38, ¶¶ 8-9, 53-63,

20  76, 87-92, 99-104, 110-120, 141-147.)  Instead, youth were urged to agree to YAT

21  contracts in highly coercive environments (often at law enforcement offices) and

22  without any legal counsel.  (*See id.*)  These facts strongly support Plaintiffs' theory

23  that Defendants violated the due process rights of youth referred to the YAT

24  program.  For class members—who were referred pursuant to Section 601—this

25  claim is even stronger because in Riverside County there was little or no possibility

26  of prosecuting these youth for this kind of conduct, which is typically no more than

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
                                                                    SETTLEMENT

1  minor childhood misbehavior.  (*See id.*, ¶¶ 40-52.)  This is just one example of the

2  strength of Plaintiffs' claims.

3        Plaintiffs' case was also strengthened by Defendants' agreement to stipulate

4  to class certification and the appointment of class counsel.  In September 2018, the

5  Court granted the motion, concluding that the class action satisfied the requirements

6  of numerosity, commonality, typicality, and adequacy, and that it was appropriate as

7  a Rule 23(b)(2) injunctive relief class to address the legal claims of potentially

8  thousands of youth who were referred and/or placed in the YAT program.  (ECF

9  37.)  Certification enabled Plaintiffs to seek class-wide declaratory and injunctive

10  relief on behalf of all class members.

11        The strength of Plaintiffs' claims, however, must be balanced against the

12  inherent risk of litigation, the complexity of the case, the fact that some of the legal

13  questions may present issues of first impression, the significant amount of time it

14  would take to litigate this case and the uncertainty of whether Plaintiffs would

15  obtain all the relief they seek.  *See Staton,* 327 F.3d at 959.

16        By negotiating and agreeing to a comprehensive settlement, Plaintiffs have

17  eliminated the risk of litigation and ensured broad and substantial relief.  That relief

18  includes significant changes to the way Defendants operate the YAT program and

19  other non-court-ordered supervision programs for Riverside County youth, along

20  with additional beneficial changes, such as providing additional community

21  oversight and funding to community organizations.  (*See generally* Agreement;

22  Torres-Guillén, Decl. ¶ 15.)  While some of this relief might have been obtained

23  through trial, the relief provided in the Agreement is much more extensive and

24  detailed than the injunctive relief that Plaintiffs could probably have obtained from

25  the Court.  (*Id.*, ¶ 17.)  The Parties' carefully negotiated settlement also has the

26  benefit of months of input from Defendants on what kind of policies and procedures

27  would be most effective and efficient in reforming the YAT program, along with

28  input from Plaintiffs on what kind of policies and procedures would cure the civil

rights violations and best help class members.  (*Id.*, ¶¶ 12-16.)  It is unlikely that a successful trial would have resulted in such extensive relief.

The Agreement will also provide relief much sooner than if the Parties continued to litigate.  (*See generally* Agreement.)  The substantial and immediate relief described in the Agreement weighs heavily in favor of approval.  *See Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28, 2012) (when a class settlement obtains "substantial and immediate relief" to the class, that relief weighs "heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal").

## C.    Class Members Reacted Positively to the Settlement And Did Not Raise Any Objections

After preliminary approval, the claims administrator mailed notices of the Settlement to more than 39,319 class members (and/or their parents or guardians), and notice was also posted on websites and in prominent locations.  (Moran Decl., ¶ 11.) Class Counsel also established the Hotline, which received 154 voicemail messages. (Nelson Decl., ¶ 13.)  Class Counsel responded to all 154 callers.  (*Id.*.)  Class Counsel Linnea Nelson also received one email message from an individual who said she had had a positive experience with the YAT program and thought the lawsuit was the "funniest lawsuit" she had ever seen. (*Id.* ¶ 16.)  None of these 155 individuals objected to the Settlement, and many expressed approval.  (*Id.*, ¶¶ 15, 17.)  Class Counsel also received no written objections (*id.*, ¶ 17), and Defendants' counsel likewise received no objections.  (Moran Decl., ¶ 13.)  The lack of any objection whatsoever by class members or their parents or guardians, and the many positive reactions, strongly supports the fairness and reasonableness of the Settlement.

## D.    A Governmental Participant is a Party to the Agreement, Weighing in Favor of Settlement

The participation of a governmental entity in the settlement of a class action suit serves to protect the interest of the class members.  *See Glass v. UBS Fin.*

-31-

*Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007).  When governmental entities are given notice of a settlement, and do not object, this weighs in favor of the settlement.  *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *37 (N.D. Cal. Nov. 16, 2007). Defendant County of Riverside is a party to the Agreement and heavily participated in the arms'-length negotiation of the Agreement.  No other governmental agencies or departments, including the County Juvenile Court and the County Public Defender, objected or commented on the settlement except to support the Agreement.  Therefore, this factor also weighs in favor of approval of the Agreement.

## VII.   <u>CONCLUSION</u>

Based on the forgoing, the Plaintiffs respectfully request that the Court grant this Motion and enter the proposed unopposed Final Approval Order.  The proposed settlement that the Parties have carefully negotiated over the course of several months is not only fair, reasonable, and adequate, but in fact provides substantial and immediate benefits to the class of the type that might not be available even after a successful trial.  The Parties have provided notice to class members and/or their parent/guardian and received no objections from any of them.  Accordingly, there is no reason to deny the Motion and the Settlement should receive final approval. Plaintiffs also respectfully request that the Court grant Plaintiffs' Motion for Attorneys' Fees.  In light of the compelling Agreement and argument *supra* and in the Motion for Attorneys' Fees, the Court should approve Plaintiffs' unopposed

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  Motion for Attorneys' Fees, which the Court set for hearing the same date as the

2  hearing on this Motion.

3   Dated:  March 9, 2020

4                                    By:  _____/s/ Sylvia Torres-Guillén_____

5                                         ACLU FOUNDATION OF SOUTHERN
                                          CALIFORNIA
6                                         Sylvia Torres-Guillén
                                          Victor Leung

7                                         ACLU FOUNDATION OF NORTHERN
                                          CALIFORNIA
8                                         Linnea L. Nelson

9                                         AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION
10                                        Sarah Hinger (Admitted *Pro Hac Vice*)

11                                        ACLU FOUNDATION OF SAN DIEGO AND
                                          IMPERIAL COUNTIES
12                                        David Loy
                                          Melissa Deleon
13

14                                        SHEPPARD, MULLIN, RICHTER
                                          & HAMPTON LLP
15                                        Moe Keshavarzi
                                          Andrea N. Feathers
16
                                          NATIONAL CENTER FOR YOUTH LAW
17                                        Michael Harris

18                                        Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

SMRH:4839-6434-9091.5                    PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
                                                                                SETTLEMENT