UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **EDCV 18-1399 JGB (JEMx)** | Date | June 22, 2020 |
|---|---|---|---|
| Title | *Sigma Beta Xi, Inc., et al. v. County of Riverside, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 80); and (2) GRANTING Plaintiffs' Motion for Attorneys' Fees and Expenses (Dkt. No. 58)

Before the Court is Plaintiffs' unopposed motion for final approval of class action settlement ("MFA," Dkt. No. 80) and unopposed motion for attorneys' fees and expenses ("MAF," Dkt. No. 58). (Collectively, "Motions".) The Court held a hearing on this matter on June 22, 2020. Upon consideration of the oral arguments and documents filed in support of the Motion, the Court GRANTS the Motions.

### I. BACKGROUND

Plaintiffs Sigma Beta Xi, Inc.; Andrew M., by and through his next friend Denise M.; Jacob T., by and through his next friend Heather T., on behalf of himself and all others similarly situated; J.F., by and through her next friend Cindy McConnell, on behalf of herself and all others similarly situated (collectively, "Plaintiffs") filed their class action complaint against the County of Riverside, Chief of the Riverside County Probation Department Mark Hake, and Chief Deputy of the Riverside County Probation Department Bryce Hulstrom (collectively, "Defendants") on July 1, 2018. (See Dkt. No. 1.) Plaintiffs challenge the legality of Riverside's Youth Accountability Team ("YAT") program, which Plaintiffs allege "sweeps children into six-month terms of probation… for being 'defiant,' 'easily persuaded by peers,' or tardy to school; using 'inappropriate language'; and behavior associated with grieving over the death of a parent." (Id. ¶ 1.)

On September 13, 2018, the parties stipulated to certify the following class: "All children in Riverside County who have been referred to the Riverside County Youth Accountability Team ('YAT') program pursuant to Cal. Welf. & Inst. Code § 601, and who have either been placed on a YAT probation contract or have been referred but not yet placed on a YAT probation contract." ("Class Cert. Stip.," Dkt. No. 35 ¶ 4.) On September 17, 2019, the Court approved the Class Certification Stipulation and issued an order certifying the class under Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.[1] ("Class Cert. Order," Dkt. No. 37 at 2.)

On September 26, 2018, Plaintiffs filed a first amended complaint. ("FAC," Dkt. No. 38.) The FAC contains eleven causes of action: 1) deprivation of the right to procedural due process in violation of the Fourteenth Amendment of the U.S. Constitution (42 U.S.C. § 1983); 2) violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution resulting from Welf. & Inst. Code § 601's vagueness on its face pursuant (42 U.S.C. § 1983); 3) violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution resulting from Welf. & Inst. Code § 601's vagueness as applied (42 U.S.C. § 1983); 4) unreasonable search and seizure in violation of the Fourth Amendment of the U.S. Constitution (42 U.S.C. § 1983); 5) violation of the First Amendment of the U.S. Constitution (42 U.S.C. § 1983); 6) violation of Art. I, § 7 of the California Constitution; 7) violation of Art. I, § 13 of the California Constitution; 8) violation of Art. I, §§ 2a, 3 of the California Constitution; and 9) violation of Art. I, § 7 of the California Constitution. (FAC.)

On July 24, 2019, Plaintiffs filed an unopposed motion for preliminary settlement approval. (Dkt. No. 57.) On August 26, 2019, the Court held a hearing on the matter and granted the motion. ("MPA Order," Dkt. No. 59.)

On July 26, 2019, Plaintiffs filed the MAF, along with the following attachments:

- Declaration of Sylvia Torres-Guillén ("STG Declaration," Dkt. No. 58-1);
  - Settlement Agreement
  - Declaration of Moe Keshavarzi ("Ex. 2" or "Keshavarzi Declaration");
  - Second Declaration of Sylvia Torres- Guillén ("Ex. 3" or "STG 2d Declaration");
  - Declaration of Sarah Hinger ("Ex. 4" or "Hinger Declaration");
  - Declaration of Michael Harris ("Ex. 5" or "Harris Declaration"); and

---

[1] In order to be certified, a class must meet the requirements of Rule 23(a) and demonstrate one of the following: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. See Fed. R. Civ. P. 23(b)(1)-(3). Here, the parties stipulated and the Court found that injunctive relief was appropriate respecting the class as a whole. See Fed. R. Civ. P. 23(b)(2).

- Proposed Order (Dkt. No. 58-2).

On March 9, 2020, Plaintiffs filed the MFA. (See MFA.) In support of the MFA, Plaintiffs filed the following:

- Summary of Objections or Responses to Class Settlement Received from Class Members ("Class Objections," Dkt. No. 80-1);
- Declaration of Sylvia Torres- Guillén ("STG 3d Declaration," Dkt. No. 80-2);
    - Settlement Agreement ("Settlement" or "Agreement");
    - YAT Contract ("Ex. A");
    - Training Plan for Riverside County Probation Department's YAT Program ("Ex. B");
    - Monitoring Plan for the Riverside County Probation Department's YAT Program ("Ex. C");
    - Notice of Class Action Settlement[2] ("Ex. D");
    - About AB Data Information Sheet ("Ex. E");[3]
- Declaration of Linnea L. Nelson ("Nelson Declaration," Dkt. No. 80-3);
- Declaration of Kelly Moran ("Moran Declaration," Dkt. No. 80-4); and
- Proposed Order (Dkt. No. 80-5).

Both Motions are unopposed. On June 22, 2020, the Court held a hearing on the Motion.

## II. SETTLEMENT TERMS

In July 2019, the parties signed the Agreement. (See Agreement at 26–28.) In this Part, the Court summarizes the terms of the Agreement.

**A. Settlement Class**

The settlement class includes "any child in Riverside County who has been referred to the Riverside County Youth Accountability Team ('YAT') program pursuant to California Welfare & Institutions Code § 601, and who was either placed on a YAT probation contract or was referred but has not yet been placed on a YAT probation contract." (Id. at § I.B.)

---

[2] On March 12, 2020, Plaintiffs filed a supplemental declaration explaining that the notice of class action settlement originally filed with the Court was outdated. (Dkt. No. 81 at 3.) An exhibit was filed with the supplemental declaration correcting the error and providing the most recent iteration of the notice. ("Corrected Notice of Class Action Settlement," Dkt. No. 81-1.)

[3] Plaintiffs also refiled Declarations from Kesharvazi, Torres-Guillén, Hinger, and Harris with the MFA for the convenience of the Court. (See generally STG 3d Declaration.)

### B. Financial Terms

The Agreement includes certain financial terms. The County will provide at least $7 million to community-based organizations that focus on positive youth development practices and demonstrate effectiveness in providing affirmative, evidence-based supports to the Riverside County community on a voluntary basis. (Agreement § XII; MFA at 20–21.) This $7 million will be disbursed in increments of $1.4 million each fiscal year. (Agreement § XII.) The Agreement also provides for an award of attorneys' fees and costs in the amount of $1 million. (Id. § XVII.) It does not appear that the class representatives seek service awards. (See generally id.) The settlement administrator will be AB Data. (Id. § XVI.A.) Defendants will contract with AB Data to create and implement the notice plan. (See id. § XVI.A.)

### C. Injunctive Relief

The Agreement principally provides for injunctive relief. The injunctive terms provide for the following:

- Referrals to YAT and YAT contracts will no longer include youths who are alleged to have violated California Welfare and Institutions Code § 601. (Agreement § III.A.) Such referrals will only include children referred under § 602. (Id. § III.B.) In certain circumstances where the Probation Department has discretion to counsel and close, provide a referral to community-based service, or refer the child to YAT, the Probation Department may not disclose information obtained from the child's parent or guardian to the District Attorney and shall not be used against the child during any Court proceeding. (Id. § III.C.) For certain enumerated offenses, there shall be a presumption that the Probation Department will counsel and close the matter or refer the child to a community-based organization. (Id.)

- Defendants will provide defense counsel, at no cost to the County's Office of the Public Defender, for all youth referred to the YAT program or other non-court-ordered supervision programs. (Id. § IV.A–F.) The Agreement explains the responsibilities and obligations of defense counsel. (See id.) A child's defense counsel will be part of the YAT team or any other non-court-ordered supervision program team. (Id. § IV.A.)

- Children will be afforded due process in all contacts with Defendants related to the YAT program or any other non-court-ordered supervision program. (Id. § V.A.) Before assigning a child to the YAT program, the Probation Department must determine there is probable cause to believe the child committed the alleged offense. (Id. § V.A.1.) When a child is referred to the YAT program, the Probation Department will provide the child and their parent/guardian with an easy-to-understand notice available in both English and Spanish. (Id. § V.A.2–3 (explaining what information is required to be in the notice).) The Probation

- Department must provide notice of program completion or notice that a child is in danger of not completing the program.  (Id. § V.A.9–10.)  The Agreement provides additional protections required for certain circumstances such as disability, drug and alcohol testing, meeting times, etc.  (See id. § V.A.4-8.)

- The Probation Department will provide introductory and ongoing training to its officers in applying its risk analysis system[4] that determines whether a child will be referred to the YAT program or receive a lesser intervention.  (Id. § VI.A.)

- For children participating in YAT, their contract will be jointly developed with their parent/guardian, defense counsel, and the YAT probation officer.  (Id. § VII.A.)  The contracts will be based off the template at Exhibit A.  (Id.)  The contract will include the allegations against the child, positive development goals, identification of the child's strengths, among other items.  (See id. § VII.A.1–2; see also Ex. A.)  The YAT contracts are prohibited from including certain terms, e.g., a tour of a correction facility, restrictions on associations with certain people, searches of the child's person or property.  (See Agreement § VII.A.5.)  There will also be a presumption against drug and alcohol testing which may be rebutted under certain specified circumstances.  (See id. § VII.A.4, VII.A.6.)  The contract must be translated if necessary for the child or parent, and the Probation Department must provide accommodations for children with disabilities.  (Id. §§ VII.A.3–4.)

- The Agreement also provides the process for record collection, creation, and retention.  (See id. § VIII.)  The Probation Department will not collect or maintain information on children who do not fall under Welfare & Institutions Code § 601 or § 602.  (Id. § VIII.A.)  The Probation Department will only retain information in an application for a petition for children referred to the YAT program.  (Id.)  No information referred under § 601 will be maintained in any gang-related intelligence databases, and the Probation Department will not seek information about immigration status of a child or their parent/guardian.  (Id. § VIII.B-C.)  For children referred under § 602, the Probation Department will minimize the amount of information requested and maintain confidentiality as provided by law.  (Id. § VIII.D.2–3.)

- The Probation Department will provide the Juvenile Justice Coordinating Council ("JJCC") and the County Executive Officer an annual analysis of anonymized data regarding referrals, participation, and outcomes for children in the YAT program or any other non-court-ordered juvenile supervision programming.  (Id. § IX.A-B.)  The reports will be publicly available.  (Id.)  The Agreement details what information will be collected and the timing of the data collection.  (See id.)

---

[4] The Probation Department uses the Ohio Youth Assessment System for Diversion ("OYAS").

- The Probation Department will create a mandatory training program for those involved with the YAT program and similar programs. (Id. § X.D.) The training, led by experts Scott MacDonald and Naomi Goldstein, will emphasize positive development, identifying necessary educational supports, youth response to trauma, and cultural competence. (Id. § X.D; see also Ex. B.)

- There will be five additional community representatives to the JJCC, appointed through the Riverside County Board of Supervisors. (Agreement § XI.A.) Plaintiff Sigma Beta Xi will have an additional seat on the JJCC for two years. (Id.) The JJCC will solicit and incorporate community feedback, review data reports, develop action plans to reduce disproportionalities in referrals to and enrollment in the YAT program, evaluate effectiveness of the YAT program, and identify potential improvements or modification to Defendants' policies and/or practices. (Id.)

- For a child referred to YAT probation without an application for a petition, the Probation Department will identify, seal, and destroy the child's YAT file within 180 days of final approval of the Agreement. (Id. § XIII.A.1.) For a child referred to YAT probation with an application for petition under § 601, the Probation Department will maintain or destroy the child's YAT file consistent with the department's retention policy. (Id. § XIII.A.2.) For children referred to YAT under § 602, the Probation Department will file an application to the Presiding Judge of the Riverside County Juvenile Court requesting that it seal all juvenile case files that would be eligible for sealing. (Id. § XIII.A.3.)

- Defendants will provide Plaintiffs' Counsel specific records to certify they are complying with the terms of the Agreement. (Id. § XIV.A.) The Agreement enumerates the information Defendants must provide. (Id. § XIV.A.1–4.)

- The parties agree that Scott MacDonald and Naomi Goldstein should be appointed as third-party monitors to ensure compliance. (Id. § XIV.B.) They will jointly monitor the County for five years and provide the Court with the necessary information to oversee Defendants' compliance. (Id.)

The complete text of the injunctive terms is available in the Agreement §§ III–XIV.

**D. Release**

All settlement class members agree to release their claims as follows:

As of the Effective Date of Settlement, the Plaintiffs and the Class Members, on behalf of themselves, their heirs, executors, administrators, representatives, attorneys, successors, assigns, agents, affiliates, and partners, and any persons

> they represent, by operation of any final judgment entered by the Court, fully, finally, and forever release, relinquish, and discharge the Defendants of and from any and all of the Settled Claims. This Release shall not apply to claims that arise or accrue after the termination of this Agreement.

(Agreement § II.A.) The "Settled Claims" include

> all claims for declaratory or injunctive relief that were brought on behalf of Sigma Beta Xi, Inc., or Class Members based on the facts and circumstances alleged in the Complaint and First Amended Complaint, including but not limited to claims that Defendants' policies, procedures, and practices related to the YAT program violated organizational plaintiff Sigma Beta Xi, Inc.'s and Class Members' rights to due process under the Fourteenth Amendment to the U.S. Constitution and Article I, § 7 of the California Constitution; their rights to be free from unlawful search and seizure under the Fourth Amendment to the U.S. Constitution and Article I, § 13 of the California Constitution; their rights to freedom of association under the First Amendment to the U.S. Constitution and Article I, §§ 2a and 3 of the California Constitution; and their statutory rights to be free from unlawful racial discrimination under California Government Code § 11135.

(Id. at § I.J.)

**E. Notice and Administration**

Pursuant to the Agreement, AB Data served as the settlement administrator. (Id. § XVI.A.) The parties completed the Agreement's procedures for notifying class members of the settlement. (See Settlement Agreement § XVI; see generally Nelson Declaration; see also Moran Declaration.) Within 10 days of preliminary approval, notices were posted on appropriate county department websites, the County's main website, and on the website of the ACLU of Southern California, ACLU of Northern California, ACLU of San Diego and Imperial Counties, and the National Center for Youth Law. (Id. § XVI.A.1.a, XVI.A.1.c.) AB Data also provided notice to juvenile defense attorneys via the Riverside County Public Defender and alternate public defender offices. (Id. § XVI.A.1.b.) The notice was posted in locations where Riverside County YAT probation officers are regularly stationed. (Id. § XVI.A.1.e.) AB Data and the County sent via First-Class U.S. Mail a postcard notice containing a summary of the case to the parent/guardian of each child whose records will be sealed or destroyed pursuant to the Agreement. (Id. § XVI.A.1.e.) The notice provided direction to website materials for more comprehensive information. (See Ex. D.) The applicable county department websites posted Spanish language translations of the comprehensive settlement information. (Agreement § XVI.D.) Class members had at least 45 days after distribution of the notice to submit objections to the Agreement. (See id. § XVI.A.3; Ex. D at 6.) There have been no objections and no opt outs from the class. (Nelson Declaration ¶ 17; Moran Declaration ¶ 13.)

## III. LEGAL STANDARDS

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. Hanlon, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." Id.

In order to approve a class action settlement, the court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2). While the rule specifies requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine."). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. DISCUSSION

### A. Motion for Final Approval of Class Settlement

#### 1. Rule 23(a) and (b) Requirements

As referenced above, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(2) pursuant to the parties' joint stipulation. (See Class Cert. Order ¶¶ 1-2.) The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified… a Rule 23(b)(3) class… [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). The parties have made no changes to the proposed Settlement Class since it was certified by the Court. Because the criteria for class certification remain satisfied, the Court confirms its Class Certification Order.

#### 2. Rule 23(c)(2) Requirements

Rule 23(c)(2)(A) instructs that "[f]or any class certified under Rule 23(b)(1) or 23(b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In the MPA Order, the Court approved three different types of notice sent to the Settlement Class. (MPA Order at 11.) AB Data adequately provided notice in the manner detailed by the terms of the Settlement and the Court's order. (See generally Nelson Declaration; see also Moran Declaration.) The Court thus finds that notice to the Settlement Class was adequate.

#### 3. Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on June 22, 2020.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

      (1) the strength of the plaintiff's case;
      (2) the risk, expense, complexity, and likely duration of further litigation;
      (3) the risk of maintaining class action status throughout the trial;
      (4) the amount offered in settlement;
      (5) the extent of discovery completed, and the stage of the proceedings;
      (6) the experience and views of counsel;
      (7) the presence of a governmental participant; and
      (8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

    **a. Strength of Plaintiffs' Case**

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. Here, Plaintiffs' MFA sufficiently illustrates the legal and evidentiary strength of their civil rights-based claims. For example, Plaintiffs detail how Defendants failed to give adequate notice to youth and their guardians about the voluntary nature of the YAT program, the basis of referrals to the program, the requirements of the program, and the fact that participation in the program would make them ineligible for diversion in future proceedings. (MFA at 29.) Plaintiffs further describe how youth were urged to agree to YAT contracts in highly coercive environments like law enforcement offices and were not provided with legal counsel prior to signing the contracts. (Id.) In all, Plaintiffs have sufficiently described enough of a factual and evidentiary basis to permit the Court to conclude that their probability of success on the merits is substantial. Indeed, the strength of Plaintiffs' claims in this matter was significant enough for Defendants to stipulate to class certification and appointment of class counsel. (See Dkt. No. 35.) Consequently, the Court finds this factor weighs in favor of granting final approval.

    **b. Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Despite Plaintiffs' likelihood of success on the merits, proceeding further in this matter would not be without risk. In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

In the instant matter, Plaintiffs acknowledge that despite the strength of their claims, many of the issues and theories underlying those claims are novel, complex, and would demand

significant resources to litigate. (MFA at 30.) As Plaintiffs put it, "[b]y negotiating and agreeing to a comprehensive settlement, Plaintiffs have eliminated the risk of litigation and ensured broad and substantial relief." (Id.) The Court agrees. Accordingly, because settlement will conserve the resources of the Court and the parties, the second factor weighs in favor of approval. See Metrow v. Liberty Mut. Managed Care LLC, 2018 WL 6265085, at *7 (C.D. Cal. June 14, 2018) (weighing second factor favorably where "[w]ithout the Settlement Agreement, the parties would be required to litigate the merits of the case — a process which the Court acknowledges is long, complex, and expensive").

### c. Risk of Maintaining Class Action Status Throughout the Trial

Plaintiffs provide no reason why there might be an elevated risk of decertification in this case. Thus, this factor is neutral.

### d. Amount Offered in Settlement

The Settlement reached by the parties does not provide for monetary damages. However, the injunctive relief provided by the Settlement is, in one word, sweeping. As described in more detail above, injunctive relief pursuant to the Settlement will: ensure meaningful, beneficial changes in the structure of the YAT program and other supervision programs operated by the County Probation department; mitigate the long-term consequences of youth participation in the YAT program by ensuring the sealing and destruction of YAT records subsequent to completion of the program; provide training, monitoring and oversight for the benefit of YAT participants and program managers; ensure that an agreement to participate in the YAT program is voluntary and informed; provide free defense counsel for youth referred to the program; and permit criminal defense counsel to participate as members of the YAT team. (See generally Agreement.) The broad and comprehensive nature of the injunctive relief agreed upon by the parties provides a benefit to Class Members immeasurable in monetary terms, but nonetheless significant. DIRECTV, Inc., 221 F.R.D. at 527 ("Although the Proposed Settlement does not provide for monetary damages; it provides Class Members with other valuable benefits not measured in terms of monetary recovery.").

Moreover, the Settlement also provides for some financial benefit: under the terms of the Agreement, the County will provide at least $7 million to community-based organizations that focus on positive youth development practices and demonstrate effectiveness in providing affirmative, evidence-based supports to the Riverside County community on a voluntary basis. (Agreement § XII; MFA at 20–21.) This $7 million funding will be disbursed incrementally in the sum of $1.4 million each fiscal year. (Agreement § XII.) Taken in light of the difficulty presented by continued litigation in this matter, the Court finds the combination of injunctive and financial relief obtained pursuant to the Agreement to be reasonable.

### e. Extent of Discovery Completed, and the Stage of the Proceedings

The fifth factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

According to Class Counsel, settlement occurred only after extensive formal and informal discovery, including the review of thousands of pages of public records and comprehensive independent investigations.  (MFA at 27; STG 3d Declaration ¶¶ 3-6.)  Although Class Counsel did not conduct depositions, they held lengthy meetings with Defendants and their counsel to assess, address, and correct perceived issues with the YAT program and other County Probation policies and procedures.  (MFA at 28; STG 3d Declaration ¶¶ 10, 12.)  These meetings included high-level staff from the Probation Department and County, who offered insight into issues with the YAT program and the potential for reforms.  (STG 3d Declaration ¶¶ 10, 12.)

As a whole, based on these facts, the Court finds the discovery conducted was sufficient to permit the parties to make an informed decision about settlement.  See Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("While the parties did not fully complete discovery prior to settlement negotiations, approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.") (citing In re Immune Response Secs. Litig., 497 F. Supp. 2d 1166, 1174 (S.D.Cal.2007)); see also DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice § 23.85[2][e] (Matthew Bender 3d ed.)).  Therefore, the fifth factor favors approval of the settlement.

### f. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.  See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted).  This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel has submitted evidence of their skill and expertise in civil rights, criminal justice, and class action litigation.  (STG 3d Declaration ¶ 19.)  As described below in more detail, Class Counsel's wealth of relevant experience in similar matters lends significant weight to their judgment and decision to settle this matter.  Additionally, Class Counsel demonstrate a realistic and balanced view of the potential outcome of the litigation based on the facts of the case and the relative positions of the parties.  As a result, the experience and views of Class Counsel also weigh in favor of final approval.

### g. Presence of a Governmental Participant

"'The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration.'" McKibben v. McMahon, 2019 WL 1109683, at *10 (C.D. Cal. Feb. 28, 2019)

(quoting Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977)). Defendants in this matter include the County of Riverside and two head officials of the Riverside County Probation Department. (MFA at 32; see also FAC.) In light of government participation and consent to the terms of injunctive relief, the seventh factor weighs in favor of final approval of the Settlement.

### h. Any Opposition by Class Members

The last factor to consider is whether any Class Member has opposed or objected to the terms of the Agreement. The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

In this case, notice was provided to class members in a number of ways, including: (1) mailing the notice to class members' addresses; (2) posting the notice on the County's website; (3) posting the notice on ACLU websites; (4) posting the notice in areas where YAT probation officers are regularly stationed; and (5) providing the notice to juvenile defense attorneys for the County. (MFA at 24–25.) The direct notice by mail was completed by January 3, 2020 and January 17, 2020 in English and Spanish, respectively. (Moran Declaration ¶ 11.) The deadline for Class Members to file any objection to the Settlement Agreement was February 17, 2020. (Dkt. No. 77.) During the response period, of tens of thousands of potential Class Members, Class Counsel received one email and 154 voicemail messages from affected youth and their parents or guardians. (Nelson ¶¶ 9, 13.) At least ten callers affirmatively expressed support for the Agreement, most were neutral towards it, and only two callers conveyed negative reactions to the Agreement.[5] (Id. ¶¶ 15–16.) Importantly, neither Class Counsel nor counsel for Defendants received an objection to or request for exclusion from the Agreement. (Nelson Declaration ¶ 17; Moran Declaration ¶ 13.) Accordingly, the Court finds that the final factor weighs in favor of approval. Because seven of the eight factors weigh in favor of approval of the Settlement, the Court GRANTS the MFA and APPROVES the Settlement Agreement.

### B. Motion for Attorneys' Fees and Costs

#### 1. Attorneys' Fees

Plaintiffs also seek approval of their request for attorneys' fees. (See MAF.) Courts are obliged to ensure the attorneys' fees awarded in a class action settlement are reasonable, even if

---

[5] The negative responses included one individual who contacted Class Counsel by email to express amusement at the lawsuit and state that she had a positive experience with the YAT program. (Nelson Declaration ¶ 16.) The other individual who expressed a negative reaction called Class Counsel and was upset that the class did not seek monetary damages. (Id.) Neither individual formally objected to the Settlement.

the parties have already agreed on the amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). "In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation [to determine attorneys' fees] because there is no way to gauge the net value of the settlement or any percentage thereof." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000). A non-exhaustive list of the Kerr factors a court may consider includes: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir. 2013) (citing Kerr, 526 F.2d at 70).

The Court finds the attorneys' fees requested are reasonable. Class Counsel represent their work on the case amounts to approximately $2,216,082.48. (STG Declaration at 7–8.) Class Counsel — consisting of dozens of different attorneys from five distinct organizations and firms — have spent thousands of hours on this case at a variety of hourly rates. Class Counsel rates included $760 for Moe Keshavarzi, $870 for Sylvia Torres-Guillén, $600 for Victor Leung, $738 for Sarah Hinger, $875 for Michael Harris, and $600 for Hannah Benton Eidsath.[6] (Id.) These rates are reasonable in light of counsels' experience:

- Moe Keshavarzi has practiced law for over fifteen years. (Keshavarzi Declaration at 3.) He has represented clients in numerous class actions. (Id.) He has also

---

[6] Various other attorneys also billed at a variety of rates. (STG Declaration at 8.) Aside from providing the year each attorney graduated from law school and their employer, Plaintiffs failed to submit information that would allow the Court to determine whether those attorneys' rates are reasonable. However, a number of factors lead the Court to find that the rates are reasonable. For one, each attorney's hourly rate is consistent with the amount of time that has elapsed since they graduated law school — more recent graduates billed less, and less recent graduates billed more. (STG Declaration at 7–8.) Second, the rates billed are within a range of rates the Court has found reasonable. (Id.) Third, several of the attorneys worked fifty or less hours on the case, making their contribution to the lodestar amount de minimis. (Id.) Fourth, Plaintiffs' MFA is uncontested and there is no common fund provided by the Agreement. Thus, an award of attorneys' fees does not risk depriving Class Members of their award. (MFA at 7, 18.) Last, Plaintiffs' requested attorneys' fees are so significantly below the lodestar amount that the Court is confident that even major adjustments would not impact the reasonableness of the requested attorneys' fees.

- litigated other civil rights pro bono cases. (Id.) Keshavarzi is a board member of multiple civil rights and legal aid organizations. (Id. at 3–4.)

- Sylvia Torres- Guillén has about twenty-seven years of experience practicing law. (STG 2d Declaration at 4.) She has defended thousands of criminal cases as a federal public defender. (Id.) More recently, Torres- Guillén was appointed as General Counsel of the California Agricultural Labor Relations Board, and later served as special counsel to California Governor Jerry Brown. (Id. at 4–5.) After her time in state government, Torres- Guillén joined the American Civil Liberties Union ("ACLU") and has served as a senior staff attorney and lead counsel on a number of civil rights cases over the last three years. (Id. at 5.) She has received a litany of awards and accolades over the last ten years in recognition of her exceptional legal work. (Id.)

- Victor Leung has practiced law for approximately ten years. (Id.) As an associate at Latham & Watkins LLP, he specialized in complex commercial litigation and handled dozens of cases in state and federal court. (Id.) For the last five years, Leung has worked for the ACLU and serves as the Deputy Litigation Director. (Id. at 6.) He was named a California Lawyer Attorney of the Year in 2018 in the area of education law. (Id.)

- Sarah Hinger has practiced law for approximately ten years. (Hinger Declaration at 4.) After graduation from law school, she served as a trial attorney for the United States Department of Justice in the Civil Rights Division. (Id.) She joined the ACLU in 2015 where she is employed as a staff attorney and has been involved in the litigation of numerous federal civil rights cases. (Id.)

- Michael Harris has over thirty years of experience litigating civil rights cases. (Harris Declaration at 3.) He is the Senior Director of Juvenile Justice and Legal Advocacy at the National Center for Youth Law ("NCYL"). (Id.) Previously, he was a staff attorney and Assistant Director of the Lawyer's Committee for Civil Rights in San Francisco. (Id. at 4.)

- Hannah Benton Eidsath has over ten years of experience representing youth involved in the juvenile justice system. (Id.) During that time, she has accumulated a wealth of experience serving as co-counsel representing both classes and individuals in suits challenging the constitutionality of government practices in truancy courts, youth-justice systems, and schools. (Id.)

See McKibben, 2019 WL 1109683, at *14 (finding hourly rates for civil rights attorneys between $336 and $1230 per hour are reasonable depending on attorney experience).

The Court also finds the number of hours billed to be reasonable. As an initial matter, Class Counsel sufficiently details the character, quantity, and complexity of legal work performed

since Plaintiffs filed the complaint. Furthermore, the amount of hours billed is consistent with the complexity, length, and difficulty of litigating and resolving the issues in this matter. In the year-and-a-half since the Complaint was filed, Class Counsel has: conducted extensive factual investigation; made numerous records requests and reviewed thousands of pages of public documents; consulted with potential clients before the commencement of litigation; consulted with youth, their guardians, and local non-profit organizations involved in the YAT program; conducted legal research and analysis on complex civil rights issues; developed case strategy in connection with the complaint; and engaged multiple experts to provide a disparate impact analysis and to assess the efficacy of the YAT program. (Hinger Declaration at 4; STG 2d Declaration at 6; STG Declaration at 5–6.) While thousands of hours were billed, the Court is confident that the involved and complicated nature of this litigation required the intensive labor Class Counsel now seeks compensation for.

In addition to the hours worked by attorneys and detailed above, several paralegals and law clerks employed by Class Counsel worked additional hours that Class Counsel did not bill. (MAF at 26.) Likewise, because the MAF was filed several months prior to finalization of the Settlement, the hours billed and fees requested in the MAF omit the additional hours Class Counsel was required to work in order to finalize approval of the settlement. (Id.) At the time of the filing of the MAF, Class Counsel anticipated working between fifty or one-hundred additional hours in order to finalize approval of the settlement and conclude their work for Plaintiffs. (Id.) The Court finds that the hours billed are reasonable in light of the significant amount of labor required and Class Counsel's generous underbilling. Finally, the Court has no reason to adjust the lodestar downward based on unconsidered Kerr factors such as the nature of the results obtained or the complexity of the issues resolved. Kerr, 526 F.2d at 70. Indeed, as detailed throughout this Order, the breadth of the injunctive relief obtained in addition to the circumvention of sizable legal hurdles by Class Counsel warrant commendation and further weigh in favor an award of the requested attorneys' fees.

The requested fee ($1,000,000) represents a lodestar multiplier of approximately .45.[7] A requested fee so significantly discounted from the lodestar weighs in favor of a finding that the provided rates are reasonable. See McKibben, 2019 WL 1109683, at *14 ("[T]he fact that counsel seeks a significantly discounted lodestar weighs in favor of finding that the provided rates are reasonable."). Considering the complexity of the case, the risks involved, and the potential length of litigation, the Court finds the .45 multiplier to be reasonable. Accordingly, the Court GRANTS the MAF and AWARDS the requested $1,000,000 in attorneys' fees.

   2. Costs

"In a certified class action, the court may award… nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for

---

[7] Requested Fee ($1,000,000) / Lodestar ($2,216,082.48) = Lodestar Multiplier (approximately .45).

travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class counsel requests $49,253.21 in costs. (MAF at 21.) The costs submitted include meal costs, travel costs, litigation expenses, and consultant fees. (Id.) All of these expenses are typically recoverable in litigation. See In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding expenses on meals, travel, consultants, and other litigation expenses reasonable and recoverable in a class action settlement). The Court therefore GRANTS the MAF to the extent it seeks reimbursement of $49,253.21 for costs.

## V.     CONCLUSION

For the foregoing reasons described above, the Court:

(1) GRANTS the MFA and APPROVES the Settlement Agreement;
(2) GRANTS the MAF as it pertains to attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $1,000,000;
(3) GRANTS the MAF as it pertains to costs and AWARDS Class Counsel costs in the amount of $49,253.21; and
(4) DISMISSES the FAC WITH PREJUDICE.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**